UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

HAROLD WAYNE  NICHOLS,       )
                             )
          Petitioner,        )
                             )
v.                           )        NO. 1:10-cv-145
                             )        *Mattice/Carter*
RICKY BELL, Warden,          )
                             )
          Respondent.        )

## MEMORANDUM OPINION

Harold Wayne Nichols ("Nichols" or "Petitioner"), an inmate in the Riverbend

Maximum Security Institution in Nashville, Tennessee, brings this petition for a federal writ

of habeas corpus, 28 U.S.C.§ 2254, challenging the legality of his confinement under 1990

Hamilton County, Tennessee convictions of first degree burglary, petit larceny, and

aggravated rape, entered pursuant to a jury verdict, [Doc. 1]. Petitioner is serving six-year

concurrent sentences on the first two offenses and twenty-five years for the aggravated

rape, though he is under sentence of death for the murder of another rape victim, as well

as a total effective 225-year sentence for six other non-capital convictions, which were not

challenged on appeal.  Warden Ricky Bell has filed an answer, which is supported by

copies of the state court record, [Docs. 6, 9, 12, and 17, Addenda 1-8].  Petitioner has

replied to the Warden's answer, [Doc. 21], and thus the case is ripe for disposition.

## I.  Procedural History

Nichols' convictions were affirmed on direct appeal by the Tennessee Court of

Criminal Appeals ("TCCA") and no further direct review was sought.  *State v.  Nichols*, No.

03C01-9108-CR-00236, 1995 WL 755957 (Tenn. Crim. App. Dec. 19, 1995). The trial court denied petitioner's subsequent application for post-conviction relief as to his convictions, but granted it with respect to his sentence. Nichols appealed the post-conviction court's decision, except for that part of the judgment requiring a new sentencing hearing, but likewise was unsuccessful in obtaining relief in the TCCA, *Nichols v. State*, No. E2008-0562-CCA-R3-PD, 2001 WL 55747 (Tenn. Crim. App. Jan. 19, 2001), or in the Tennessee Supreme Court. *Nichols v. State*, 90 S.W.3d 576 (Tenn. 2002). Nichols, who was resentenced on December 17, 2007, was not granted any relief on direct review of his resentencing in the state appellate courts. *Nichols v. State*, E2008-00169-CCR-R3-CD, 2009 WL 2633099 (Tenn. Crim. App. Aug. 27, 2009), *perm. app. den*. (Tenn. 2010). On June 1, 2010, petitioner timely filed this instant habeas corpus application.

## II. Factual Background

At 1:30 a.m. on December 21, 1988, Nichols went to a house in East Ridge, a Chattanooga suburb, where P.G. lived. He watched P.G. through a window, saw that she was alone, entered the residence through the unlocked front door; and picked up a knife from her kitchen. When he found P.G. sleeping on a sofa in the living room, he awakened her and, holding his hand over her mouth and a knife to her throat, pulled her up and pushed her towards the back of the house where the bedrooms were located. When they arrived in the back bedroom, Nichols forced P.G. to lie down on the bed, slit her top open with the knife, pulled down her sweat pants, and vaginally raped her on the bed. Petitioner then attempted to rape her anally, but when he could not do, he ejaculated on her face. Nichols then made P.G. go into a shower in the bathroom, turned on the water in the

shower, and ordered her to wash her body and to wash her hair. While P.G. was in the shower, petitioner left the house, taking with him P.G.'s purse and the knife.

An investigation led police to Nichols and on January 5, 1989, he was taken into custody. On January 6, 1989, beginning at 12:47 a.m., Nichols gave a short confession to the rape of P.G. to East Ridge police officers. He also made an additional brief confession as to the items he had taken from the rape scene, though it is unclear as to the number of subsequent statements he made to law enforcement officers in addition to these confessions. Nichols's wife gave an oral statement that same morning, reporting that, beginning in July or August of 1988, her husband began to go out at night; that sometimes she would know when he left; and that other times, she would wake up, discover he was gone, and wonder where he was.

Thereafter, petitioner was indicted for first-degree burglary, petit larceny, and aggravated rape. At the trial, P.G. identified him as her assailant and one of his confessions was read to the jury. Nichols did not testify at trial.[1] He was convicted of all charges.

## III. Discussion

The § 2254 petition for habeas corpus raises five grounds: (1) in four instances, Nichols received ineffective assistance; 2) a second change of venire, without petitioner's consent, violated his rights; (3) a new indictment on the morning of trial denied petitioner notice and time to prepare a defense; (4) a coerced confession, secured following

---

[1] Nichols testified in the murder trial and, apparently referring to his confessions regarding other rape victims, said that "getting all this, the other things off my mind–or off my chest was like a relief."

Nichols's illegal arrest and request for counsel, was admitted in error at the trial; (5) his resentencing was inordinately delayed, resulting in a denial of Nichols's speedy trial right.[2]

The Warden suggests, in his response, that relief should not be granted because certain claims have been procedurally defaulted (or, alternatively have been insufficiently pled) and because Nichols is not entitled to relief from the state court decisions rejecting the other claims on the merits, given the deferential standards of review set forth in 28 U.S.C. § 2254. The Court agrees with respondent Warden and, for the reasons which follow, will **DENY** the petition and **DISMISS** this case.

These claims have been organized into two categories for purposes of discussion. The first category encompasses the procedurally defaulted (and insufficiently pled) claims. The second category contains those claims which were adjudicated in the Tennessee courts.

A.  **Procedurally Defaulted Claims**

A state prisoner who petitions for habeas corpus relief must first exhaust his available state court remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts. 28 U.S.C. § 2254(b)(1). The exhaustion rule requires *total* exhaustion of state remedies, *Rose v. Lundy*, 455 U.S. 509 (1982) (emphasis added), meaning that a petitioner must have fairly presented each claim to all levels of appropriate state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999). A claim must also be offered on a federal constitutional

---

[2] The Warden, in his response, renumbered petitioner's claims as numbers 1-8. However, since the grounds for relief were numbered 1-5 in Nichols § 2254 petition, the Court will follow suit.

basis—not merely as one arising under state law. *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) (citing *Riggins v. McMackin*, 935 F.2d 790, 792-93 (6th Cir. 1991)).

A prisoner who has failed to present a federal claim to the state courts and who is now barred by a state procedural rule from returning with his claim to those courts has committed a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Federal review of a procedurally defaulted claim is foreclosed, unless the habeas petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Id.* Cause can be shown where interference by state officials has rendered compliance with the rule impracticable, where counsel rendered ineffective assistance in violation of the prisoner's right under the Sixth Amendment, or where the legal or factual basis of a claim is not reasonably available at the time of the procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986). A petitioner demonstrates prejudice by establishing that the constitutional error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

1. Second Change of Venue

Nichols alleges, as Ground 2, that after successfully moving for a change of venue, his case was transferred to Loudon County for jury selection, but then transferred back to Hamilton County for trial, without his consent for the second change of venue. The Warden argues that petitioner waived this issue in state court and thereby committed a state procedural default. In his reply, petitioner presents two primary arguments to avert a finding of procedural default.

5

The sentence in the state court's opinion upon which the Warden predicates his procedural default defense reads, as follows: "The [petitioner] also cites Article I, §§ 6, 8 and 16 of the Tennessee Constitution, and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Tenn. R. Crim.P. 18 and 21, but makes no argument under those constitutional or rules provisions." *Nichols*, 1995 WL 755957, at *2 n.5.

### a. The Exhaustion Arguments

Petitioner suggests that he presented five pages of argument to the state court including, that the "two changes of venue which occurred in these trials violated [his] rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution . . . and [a] new trial() [is] warranted on . . . the() case()," [Doc. 21, Petr's Reply at 12]. Thus, Nichols asserts that this presentation of the issue fulfils the requirement that he exhaust his state remedies. The law governing the exhaustion issue is not on his side.

To exhaust state remedies, a petitioner must have presented the very issue on which he seeks relief from the federal courts to the courts of the state which he claims is wrongfully confining him. *Picard*, 404 U.S. at 275-76; *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing *Picard*, 404 U.S. at 271). A petitioner has not exhausted his state remedies if he has merely presented a particular legal theory to the courts, without presenting each factual claim. *Pillette v. Foltz*, 824 F.2d 494, 497-98 (6th Cir. 1987). And as noted, the claims must be "fairly presented" to the state courts—a requirement which is satisfied where a petitioner cites to state decisions

employing constitutional analysis in similar fact patterns; asserts his claim in terms so particular as to call to mind a specific right; or alleges facts well within the mainstream of constitutional law. *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir.1987). However, general allegations of denial of broad constitutional rights does not constitute a fair presentation of a claim that specific constitutional rights were violated. *See McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000).

  While it is true that the last sentence in Nichols's five-page argument offered to the TCCA contains the excerpt to which he cites, it is also true that he made no attempt, beyond this passing reference to federal law, to offer any factual elaboration or develop any argument as to how the alleged venue error violated those particular amendments to the U.S. Constitution. Because petitioner did not fairly present his venue claim to the state courts, he has not exhausted it. *Cf., Picard*, 404 U.S. at 275 (exhaustion requirement satisfied "once the federal claim has been *fairly presented* to the state courts") (emboldening added).

To show that his claim was exhausted in the state courts, Nichols next asserts that the state courts "adjudicated the constitutional issues related to the irregularities regarding venue," [Doc. 21, Petr.'s Reply at 19]. Where a state decides the claim on the merits without raising a procedural bar, that claim has been exhausted. *See Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989), for the rule that a petitioner meets the fair presentation requirement if the state court rules on the merits of his claim). The Court has examined the state court's opinion and finds that petitioner's allegation that his claim was adjudicated is flatly inconsistent with that opinion.

7

The TCCA noted that the state supreme court had specifically addressed "this issue" regarding the change of venue on direct appeal, and then went on to describe the precise issue resolved by the higher state court:

> "Asserting that the transportation of the Loudon . . .County jurors back to Hamilton County constituted a second change of venue, to which the [petitioner] never consented, the [petitioner] argues that the trial court abused its discretion and violated his constitutional and statutory rights under Article I, Section 9 of the Tennessee Constitution and under Rule 18(a) of the Tennessee Rules of Criminal Procedure."

*Nichols* , 1995 WL 755957, *at *2 (footnote omitted) (italics added).

Therefore, Nichols did not exhaust his state remedies because the claim he presented was identified and addressed by the TCCA (and, previously, by the state supreme court), was one of pure state law. *See Picard*, 404 U.S. at 276 ("The [exhaustion] rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts.").

Because petitioner did not exhaust this claim in the state courts and because he has no remaining opportunity to do so, given the one-year statute of limitations and the one-petition rule which apply to post-conviction petitions in Tennessee, *see* Tenn. Code Ann. § 40-30-102(a) and (c), the claim has been technically exhausted, but is procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Castille*, 489 U.S. at 351-52 ("The requisite exhaustion may nonetheless exist, of course, if it is clear that [petitioner]'s claims are now procedurally barred under [state] law.").

### b. The Waiver Arguments

When a state invokes a procedural default defense, a court in the Sixth Circuit must apply a four-factor analysis to determine: 1) whether there is a procedural rule which

applied to a petitioner's claim and whether a petitioner complied with the rule; 2) whether the procedural rule was actually enforced against a petitioner; 3) whether that rule is an adequate and independent state ground sufficient to block habeas review; and 4) whether a petitioner can demonstrate cause for his failure to comply with the rule and prejudice resulting from the alleged constitutional violation. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Beuke v. Houk*, 537 F.3d 618, 630 (6th Cir. 2008) (applying *Maupin*).

The Warden argues that Nichols waived his claim based on this comment by the state court: "The [petitioner] also cites Article I, §§ 6, 8 and 16 of the Tennessee Constitution, and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Tenn. R. Crim.P. 18 and 21, but makes no argument under those constitutional or rules provisions." *Nichols*, 1995 WL 755957, at *2 n.5.

Nichols asserts that no procedural default occurred because the TCCA's failure to cite to its rule of waiver indicates that it did not apply that procedural rule, which is the second *Maupin* factor. While it is true that the state court did not explicitly cite to the procedural rule, the absence of an express statement of a procedural rule is not determinative of whether that rule was applied." *See Coleman*, 501 U.S. at 738 ( "It is not necessarily the case that state courts will take pains to provide a clear and express statement of procedural default in all cases. . . ."; *Arias v. Lafler*, 511 Fed.Appx. 440, 447, 2013 WL 85923, *6 (6th Cir. Jan. 9, 2013) ("The [state] court was not required to make a clear and express statement of the ground for its decision in order to preclude federal *habeas* review."); *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) (The requirement that a state court must clearly and expressly proclaim that its judgment was based on a

state procedural rule "only applies when a state court judgment rests primarily on federal law or is interwoven with federal law."). Suffice it to say that a claim which lacks any supporting argument is viewed by Tennessee courts as waived. *See e.g., State v. Hester*, 324 S.W.3d 1, 80 (Tenn. 2010) ("A reviewing court may deem an issue waived when a party fails to develop an argument in support of its contention or merely constructs a skeletal argument.").

Therefore, Tennessee has a procedural rule of waiver, *Hutchison v. Bell,* 303 F.3d 720, 738 (6th Cir. 2002), and the rule was applied in Nichols's case. The rule is an adequate and independent state ground sufficient to foreclose habeas review. *Hutchison*, 303 F.3d at 738.

Petitioner's last argument with respect to the venue issue (i.e., that the state court's ruling was a significant departure from state law regarding venue) does not relate to procedural default and does not affect the Court's procedural default finding. The law is clear. The interpretation of state statutes lies within the exclusive purview of state courts, since those courts are the final arbiters of state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Where state courts have spoken on a matter of state law, it is not the role of a federal habeas court "to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A decision, which rests entirely state law, generally is not of federal concern. See e.g., *Swarthout v. Cooke*, __ U.S. __, __, 131 S. Ct. 859, 861, 178 L. Ed.2d 732 (2011) (claims which allege a state law error or an incorrect application of state law do not present cognizable issues for federal habeas review).

Petitioner can still obtain habeas review of this procedurally defaulted claim if he can demonstrate cause and prejudice. Nichols has not shown, or even alleged, cause and

prejudice to surmount the default, and he, thereby, has forfeited federal habeas corpus review of this claim.

## 2. The Indictment Claim

In Ground three of the petition, Nichols maintains that he was re-indicted on the morning of trial and that the new indictment contained material additions to the crimes charged earlier.  The material alterations, according to petitioner, consisted of a change in the date of offense and the addition of "vaginal intercourse' and a personal injury requirement.  Petitioner further maintains that he had been re-indicted once before, that the alleged date of incident was changed twice, and that these changes and additions denied him notice and an adequate time to prepare a defense.  Yet despite the problems with the indictments, the trial court refused to allow Nichols to show the jury the original indictments and the three different dates[3] in question.

The Warden, in his answer, argues that Nichols has committed a procedural default of this claim by failing to offer the claim to state courts as a constitutional violation and by offering it instead based solely on state law grounds.

Petitioner denies any procedural default and quotes the argument he presented in state court as refuting respondent's assertion of procedural default.  This is the argument to which petitioner cites:

"Nichols alleged he was:

---

[3]    In Nichols's reply, he explains that one week before trial, the State sent him a letter stating that it was going to amend the original indictments against him to show a December 12, 1988, offense date, [Doc. 21, Petr.'s Reply at 24].  Apparently, one of the "three different dates in question," to which Nichols adverts in his § 2254 petition, is the December 12, 1988, date contained in the letter.

forced to proceed to trial without being given any time, much less adequate time, to prepare his defense to the new material issues raised in the amended indictments upon which the state actually proceeded to trial.  In denying his motion for a continuance, the court violated Mr. Nichols' rights under the Fifth, Sixth, Eight and Foruteenth Amendments to the United States Constitution . . . and a new trial should be granted," [Doc.  21, Petr.'s Reply at 23].

The above quoted argument was offered in the TCCA in support of the following claim:

> THE COURT ERRED BECAUSE IT REFUSED TO CONTINUE THE TRIAL DATE ON THESE CASES WHEN, ON THE MORNING OF TRIAL, MR. NICHOLS WAS REINDICTED ON ALL THREE OF THE CHARGES AGAINST HIM, AND IT THEN REFUSED TO ALLOW MR.  NICHOLS TO SHOW THE ORIGINAL INDICTMENTS TO THE JURY TO PROVE THERE WERE THREE DIFFERENT DATES IN QUESTION IN THESE CASES,  [Addendum 2, Doc. 1 at 6-7].

Immediately following Nichols's identification of his claim in the state court pleading, he referred to a state statute, which requires a mandatory fourteen-day time period between a return of an indictment and a trial on that indictment.  Then, after citing and discussing several state court cases involving the statute and the period of time required between indictment and trial, petitioner made this assertion: "Clearly the State's actions with regard to the indictments failed to provide the required notice to Mr. Nichols of the facts sought to be proved against him.  T.C.A.  §40-14-105 (1990) was specifically drafted with that fundamental principle in mind," (*Id*. at 9).  The last sentence in the discussion of his claim, as presented in the state court pleading, is this: "In denying his motion for a continuance, the court violated Mr. Nichols' rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 8, 9 and 16 of the Tennessee Constitution and a new trial should be granted," *(Ibid*.).

To escape a procedural default, the claim must itself be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments. *See Blackmon v. Broker*, 394 F.3d 399, 401 (6th Cir. 2004). The Court concludes, based on the manner in which Nichols submitted his claim to the state court, that he did so based on state law grounds, not federal constitutional law. Moreover, the TCCA decided the claim as it was presented to it—purely as a matter of state law. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("The state court, when presented with [a petitioner's] claim of error under [state law] understandably confined its analysis to the application of state law.").

Lastly, in state court, petitioner's claim was that his rights were violated by being denied a continuance—a claim which he has not raised here. *Picard*, 404 U.S. at 276 ("raising one claim in the state courts and another in the federal courts" does not satisfy the exhaustion requirement). Because the record shows that this constitutional argument was not presented to, or considered by, the Tennessee courts, review is barred by petitioner's procedural default and by his failure to show, or even allege, cause and prejudice to surmount the default.

## B.  Adjudicated Claims

Under the review standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2241, *et seq*.,  a court considering a habeas claim must defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.* at 411.

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) ( noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)). Further, findings of fact which are supported by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of organization, the Court will address the claims in a different order from the order in which they were raised.

1. <u>The Confession Claim (Pet., Ground four)</u>

In this claim, petitioner maintains that his confession, which allegedly was obtained following an illegal arrest,[4] the denial of counsel, and under coercive and suggestive circumstances, was admitted against him at the trial. More specifically, Nichols asserts that he was arrested based on an anonymous tip, questioned after he had requested an attorney, and deprived of food and sleep. Further, Nichols alleges that his confession was induced by implicit promises of leniency if he cooperated and threats against him if he did not cooperate.

This claim was presented to and considered by the TCCA, during Nichols's direct appeal:

> The [petitioner] was arrested at 10:30 P.M. on January 5, 1989. After he was taken into custody he was transported to the East Ridge Police Department where he was questioned extensively concerning the rape and assaults on [PG] The record indicates that he was read his *Miranda* rights at the station and signed several waivers of those rights in the ensuing days. His signatures on the waivers was (sic) witnessed by Larry Holland, a detective employed by the East Ridge Police Department.
>
> The defense contends that the [petitioner]'s statement w[as] not given voluntarily and that questioning should have stopped immediately after he was allegedly refused access to counsel. The [petitioner] further testified that he was not read his rights at the time of his arrest. He contends that the circumstances of his arrest and questioning constituted a threatening situation that served to coerce him into making his statement. Thus, the

---

[4] Because an examination of petitioner's brief on direct appeal to the TCCA discloses that he did not assert an illegal arrest as a factor in rendering his confession involuntary, [Addendum 2, Doc. 1 at 33-36], this issue has been procedurally defaulted and habeas review foreclosed. However, the illegal-arrest claim was raised as an illustration of ineffective assistance and will be discussed in that context in this opinion.

15

defense contends that the statement that followed was inadmissible.

...

In support of these allegations, the defense relies upon testimony by the [petitioner] that directly contradicts testimony given by the police officers present at the time of questioning. The [petitioner] testified that he requested that an attorney be present before he answered questions. He further testified that the officers conducting the interrogation refused to provide him with an attorney and continued to ask him questions. Furthermore, he alleged that when he made his request, the officers told him that they would have to awaken a judge in order to honor his request and that things would go better for him if he cooperated and answered the questions.

As is so often the case, the [petitioner]'s testimony is inconsistent with testimony given by officers who were present at the time of the questioning. Sergeant Daniel Dyer, of the Red Bank Police Department, testified that the [petitioner] never asked for an attorney at the time of his arrest and that he was very cooperative during the investigation. Larry Holland, the detective who testified that he was present when the [petitioner] made his statement, stated that the [petitioner] was advised of his rights before he gave his statement and that he did not ask for an attorney at that time. The officers testified that the [petitioner] never made such an unequivocal request, and that if he had, they certainly would not have endangered such an important investigation by denying an accused his right to counsel. Finally, the [petitioner] acquiesced to the officers' requests by signing and initialing numerous waiver forms that demonstrated his knowledge of his rights.

We agree with the trial court's findings that the [petitioner] was not coerced into making his statement and that he knowingly and voluntarily waived his rights to counsel . . . .

In addition, even though it may have been appropriate for the police officers to advise the [petitioner] of his rights at the time of his arrest, he was taken into custody pursuant to a valid

arrest warrant and was advised of his rights before questioning, as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 1626, 16 L.Ed.2d 694 (1966). Finally, the allegations made by the defense that the [petitioner] was deprived of food and sleep during the investigation are not supported by the record. The [petitioner] was arrested at approximately 10:30 P.M. and was questioned until approximately 4:21 A.M. He was then allowed to sleep for several hours before being questioned the next morning at 11:30 A.M. The conditions of his confinement were neither cruel nor unusual and did not serve to coerce him in any way. This issue has no merit.

*Nichols*, 1995 WL 755957, at *8-*9

Respondent argues that petitioner is not entitled to relief since he has not shown that the TCCA's decision is an unreasonable application of clearly established federal law. Petitioner takes the opposite position, suggesting that the voluntariness ruling by the TCCA was not just an unreasonable application of controlling Supreme Court precedent, but also was contrary to that precedent.

*a. The Governing Law*

A defendant validly may waive a constitutional right if he does so voluntarily, knowingly, and intelligently. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). By the same token, a defendant may waive his privilege against self-incrimination and give statements and those statements, if voluntary, are admissible at trial. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). To be voluntary, the waiver must be a free and deliberate choice rather than a result of intimidation, coercion or deception and made with full consciousness of the nature of the right being waived and the consequences attendant to the waiver. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

An assessment of the voluntariness of a statement encompasses the "totality of circumstances" surrounding the confession. *Arizona v. Fulminante*, 499 U.S. 279, 285-86 (1991). If elicited by law enforcement officials by means of psychological coercion, e.g., when their conduct is such as to overbear the accused's will to resist, a statement is not voluntary. *Miranda*, 384 U.S. at 448.

Among the factors to be considered are whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; the use of physical punishment, such as the deprivation of food or sleep, *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); the use of threats, trickery, or cajolery, *Miranda*, 384 U.S. at 455-58, and whether *Miranda* rights have been given. *Withrow v. Williams*, 507 U.S. 680, 694 (1993). However, "coercive police activity is a necessary predicate to the finding that a [statement] is not 'voluntary.'" *Connelly*, 497 U.S. at 167.

In ruling on this claim, the TCCA first noted that there is a presumption that an accused did not waive his rights and that the voluntariness of an accused's statement depends on the surrounding circumstances. The state court also relied on *Culombe v. Connecticut*, 367 U.S. 568, (1961), for the relevant circumstances to consider in making a determination of voluntariness. In that case, the Supreme Court observed that due process is violated by the use of a confession, where an accused's will has been overborne and his capacity for self-determination critically impaired. *Id*. at 602.

Although the TCCA did not cite to the same cases involving the voluntariness issue to which this Court has cited, that makes no difference, given that the state court derived the governing legal principles from Supreme Court precedents—precedents which require

an examination of the totality of the circumstance to determine the voluntariness of a confession. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (To satisfy the "contrary to" component of § 2254(d), a state court need not cite to or even be aware of Supreme Court precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them.").

Thus, the state court's ruling can be examined under the "unreasonable application" prong of § 2254(d), but must not be upset unless an independent review of the record and the relevant principle in Supreme Court cases persuades this Court that the ruling contravenes or unreasonably applies that principle or results from an unreasonable factual determination in light of the evidence offered to the state court. *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006).

*b.* <u>*Analysis*</u>

According to the TCCA, Nichols was read his *Miranda* rights at the police station and signed several waivers of those rights, with the signatures being witnessed by a police officer. Nichols thereafter disclosed information concerning the offenses against P.G. The TCCA noted that petitioner testified that he asked that an attorney be present during his questioning, but that the officers refused and continued the interrogation. Nichols further testified that the officers told him that, in order to honor his request, they would have to awaken a judge and that they also advised him that things would go better for him if he cooperated and answered the questions.

Officers who were present during the questioning testified to the contrary, stating that Nichols never asked for an attorney when he was arrested or when he was questioned following the reading of the *Miranda* warnings. Indeed, one officer testified that petitioner

was very cooperative during the investigation. The TCCA also noted the numerous waiver-of-rights forms Nichols had signed and initialed.

The TCCA resolved against petitioner the conflicting evidence as to whether the Nichols had requested counsel. Its decision to credit the evidence of the signed waivers and the officers' testimony is entitled to deference, absent clear and convincing evidence to the contrary. No such evidence has been presented and, thus, the Court will defer to the state court's factual finding that Nichols did not assert his *Miranda* right to an attorney.

As to the assurance Nichols purports to have been given (i.e., that things would go better if he cooperated and answered the questions), "'speculation that cooperation will have a positive effect'" does not, in and of itself, render a confession coerced. *United States v. Wiley*, 132 Fed. Appx. 635, 640, 20051285712, *4 (6th Cir. May 26, 2005) (quoting *United States v. Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988)). And while "'a promise of leniency is relevant to determining whether a confession was involuntary and, depending on the totality of the circumstances, may render a confession coerced', a statement about possible leniency upon cooperation is not generally impermissible." *United States v. Cruse*, 59 Fed.Appx. 72, 78, 2003 WL 344337, *5 (6th Cir. Feb. 7, 2003) (citations and footnote omitted).

Here, the state court found, and it is undisputed in these proceedings, that Nichols was read his *Miranda* rights before his interrogation began. The TCCA likewise found no support in the record that Nichols was deprived of food and sleep and indeed, noted that he was arrested at 10:30 p.m., questioned until 4:21 a.m., and slept for several hours, before the interrogation resumed.

Given the above circumstances surrounding his confession, this Court concludes that the TCCA's decision that Nichols "was not coerced into making his statement[5] and that he knowingly and voluntarily waived this rights to counsel" did not involve an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts in light of the evidence presented. No relief can be granted with respect to this claim.

2. _Ineffective Assistance of Counsel (Pet., Ground One)_

In his second claim in the adjudicated-claims grouping, petitioner maintains that, in four instances, the attorneys who were appointed to represent him provided him ineffective assistance.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. _Strickland v. Washington_, 466 U.S. 668,

---

[5] The coercion component of Nichol's confession claim was discussed in _Nichols v. Heidle_, ___ F.3d. ___, ___, 2013 WL 3821537 (6th Cir. July 25, 2013) the Sixth Circuit's recent opinion denying his appeal of his capital habeas corpus case: "In a peculiar tangent, a 16–year–old girl accused Nichols of raping her, 'resulting in [her] pregnancy.' The State later dismissed this claim after discovering it was false. . . . Nichols vehemently denied committing that particular rape, despite confessing to numerous others, and defense counsel were able to show that Nichols could not have committed that rape as alleged . . . . This aspect of Nichols's rape case is perhaps most noteworth because it demonstrates Nichols's willingness and ability to dispute and defend against a false rape accusation, thereby undermining a suggestion that Nichols's numerous other confessions were the result of coercion or the mere acquiescence to police suggestion. Nichols has abandoned his prior claims that his confessions were the product of coercion and police manipulation, but hints of those accusations linger in his present arguments. . . ." _Id_. at 7, n.4.

687 (1984).  In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687.  Petitioner has the burden of showing both deficient performance and prejudice, *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)—the latter burden being quite a heavy one, *Williams v.  Taylor*, 529 U.S. 362, 394 (2000).  In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.  A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.  The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show that counsel's deficient performance prejudiced the defense.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.  In

22

order to prevail on a claim of prejudice, a petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

While both prongs must be established in order to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697. Review of a *Strickland* claim under § 2254(d)(1) is"doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420 (2009), and a federal habeas court, reviewing such a claim must be wary, lest it equate "unreasonableness under S*trickland* with unreasonableness under § 2254(d)." *Harrington*, 131 S. Ct. at 788. Under § 2254(d), "the question is not whether counsel's actions were reasonable. . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Here, Nichols alleges that he received ineffective assistance from his attorneys, Lead Counsel Hugh J. Moore, Jr., and Co-Counsel Rosemarie L. Bryan. More specifically, petitioner asserts that his lawyers failed to investigate the reliability of his statements taken under coercive and suggestive conditions and failed to present those facts to the jury; failed to investigate and inform Nichols of other viable suspects; failed to request suppression of his statements given after his illegal arrest; and "[t]hat the rape conviction was used to support the aggravating factor in Nichols's death penalty case," [Doc. 1, Pet. at 6].

The assertions of fact which support the claims of ineffective assistance are contained in Nichols's reply, not his barebones petition. The section of petitioner's reply discussing the ineffective assistance claims is disorganized and the claims and arguments

are intermingled and undifferentiated. Poor draftsmanship of the reply has caused the Court to consume an unwarranted portion of its scarce resources in attempting to match the arguments with the individual claims to which the arguments correspond.

a. *Reliability of Nichol's Statements*

Petitioner alleges that counsel failed to explore the possibility that the confessions were coerced or false; did not debrief Nichols to determine whether there was evidence of coercion during his interrogation; and did move to suppress the statements on the grounds that he was coerced to confess, [Doc. 21, Petr.'s Reply at 3, 5]. Petitioner further alleges that, though he was arrested as he was preparing to eat dinner, he was not allowed food until later the following morning; that at least six officers were present in the small interrogation room; that his request to call his wife was denied; that he was promised "help" and "treatment" if he cooperated by giving a statement; and that, according to an expert's deposition testimony, one interrogation method used with Nichols may lead to "false memories and unreliable confessions," [*Id*. at 6,7]. Petitioner also asserts that the interrogation tactics employed with Scott Simcox, a person of interest in Nichols' capital case, could have proved the coerciveness of the interrogation process in his (Nichols's) case.

Petitioner maintains that, had counsel investigated the coercive circumstances surrounding the confessions, there is a reasonable probability that his statements would have been suppressed. Had counsel achieved that suppression of the statements, Nichols concludes that, since the only other evidence of his involvement in this case was the victim's in-court identification, there is also a reasonable probability that "the reliability of the outcome of the trial would have been enhanced," [*Id.* at 8].

When this claim was raised before the Tennessee Supreme Court, it found that

> trial counsel's investigation and defense were reasonably shaped by Nichols' confessions and statements to the non-capital offenses. Nichols confessed to the offenses involving ... P.G. . . . His confession to the rape of P.G. described his entry, use of a knife, the location of the victim on a couch in the living room, and the facts of the offense.

> Although the petitioner now argues that his trial counsel ... failed to challenge his confessions as false because they were given in a short period of time in response to leading questions asked by police officers, we once again observe that he never refuted his confessions or his statements to his trial counsel and never provided a basis for a false confession defense. In addition, the record reveals that substantial evidence corroborated trial counsel's testimony. ... [In] the trial() for the offense() against P.G., the victim() made [an] in-court identification() of the petitioner as the assailant, and the jur[y] found that the petitioner's guilt was proven beyond a reasonable doubt.

> In sum, the evidence at the post-conviction hearings did not establish the deficient performance of counsel given the petitioner's confessions and consistent statements of guilt. We conclude that trial counsel's representation did not fall below an objective standard of reasonableness ... in failing to challenge the confessions as false.

> In addition, we agree with the Court of Criminal Appeals' conclusion that Nichols failed to show any prejudice under the second prong of the analysis. . . . Similarly, the petitioner's confessions to the offenses committed against P.G ... were read to the jury in the trial() for these offenses, and the victim() identified him as the perpetrator. The evidence at post-conviction with respect to P.G. . . . therefore failed to establish a reasonable probability of a different outcome but for the performance of counsel.

*Nichols*, 90 S.W.3d at 596.

Petitioner claims that the state court's decision is contrary to the controlling Supreme Court precedent, as it burdened him with a higher standard of proof than the "reasonable probability" which *Strickland* requires. This is so, petitioner contends, because the state court found that he had not established prejudice by "clear and convincing evidence," [Doc. 21, Petr.'s Reply at 13 (citing *Nichols*, 90 F.3d at 595)], whereas all that is required is a "reasonable probability" of a different result.

The state supreme court's challenged finding reads:

> "The trial court's findings with respect to counsel's performance in the rape case() involving . . . P.G. . . . w[as] nearly identical to its findings with respect to counsel's performance in the [death penalty] case(), and it concluded that the petitioner had not established his allegations by clear and convincing evidence. We again agree with the Court of Criminal Appeals that the evidence in the record does not preponderate against the trial court's factual findings and that the petitioner failed to establish that trial counsel were deficient."

*Nichols*, 90 F.3d at 595.

The requirement of clear and convincing evidence, as the state appellate courts instructed in earlier parts of their opinions, applies to the allegations of *fact* offered in support of an ineffective assistance claim, not to the standard of proof necessary to establish such a claim. *See Nichols*, 90 S.W.3d at 586 ("The December 1996 petition challenging all of the convictions in the non-capital cases is governed by the more recent Post–Conviction Procedure Act, which requires that allegations be proven by clear and convincing evidence.  *See* Tenn. Code Ann. § 40–30–210(f) (1997)."); *Nichols*, 2001 WL 55747, at *10 ("The petitioner must establish the factual allegations contained in his noncapital petitions by clear and convincing evidence.   Tenn. Code Ann. §

40-30-210(2)(f).").  Hence, the state court did not impose a "clear and convincing" standard of proof to establish the *Strickland* components.

Petitioner's next argument is that the state court decision involves an unreasonable application of *Strickland*, given its finding that counsel was relieved of the duty to investigate because Nichols gave confessions to the offenses.  To illustrate his argument, petitioner cites to *Nichols*, 90 S.W.3d at 593.

The only judicial finding that the Court has been able to locate on page 593 reads:

> With respect to the murder and rape of Karen Pulley, trial counsel testified regarding their investigation and defense strategy, which they admitted was influenced by Nichols' confessions. The petitioner's detailed and emotional videotaped confession to the murder and rape, for instance, described the victim's house, the petitioner's point of entry, the layout of the bedroom, and the facts of the rape and murder. The petitioner also consistently admitted his guilt regarding the Pulley offense to his counsel, investigator, and mental health expert. As we have noted, it is entirely reasonable for counsel's actions to be influenced by a defendant's own statements. *See Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. at 2066 (stating that reasonableness of counsel's actions "may be determined or substantially influenced by the defendant's own statements or actions").

*Nichols*, 90 S.W.3d at 593

The state court did not, as Nichols asserts, conclude that the existence of the confessions, in and of themselves, relieved counsel of the duty to investigate.  Instead, the state court, citing to *Strickland*, determined that Nichols's confessions, which described the location, layout of the first victim's house, and commission of the offenses in great detail, along with his multiple admissions of guilt to various individuals involved in his defense, reasonably influenced counsel's investigation.  A finding that counsel's investigation was

27

not unreasonable is not the same as a finding that counsel is relieved of performing an investigation in the first place.  More importantly, the quoted paragraph is contained within the section of the state court opinion, which is entitled, "*C. Findings and Conclusions* 1. Karen Pulley Offenses," and, thus the challenged finding was made with respect to a case which is not before the Court.

Nichols also argues that the state court's determination that he was not prejudiced by the failure to investigate the reliability of the confession because it was read to the jury is not only unreasonable, but also nonsensical.  In addition to finding that the confession was read to the jury, the state court also pointed out that P.G. identified Nichols at trial as the perpetrator of the offenses against her.  While the state court's reasoning may be  a bit abstruse, so long as the finding of no prejudice is not an unreasonable application of *Strickland*, it is not of constitutional concern.  *See Coleman v. Thompson*, 501 U.S. 722, 739 (1991) ("[W]e have no power to tell state courts how they must write their opinions. We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim . . . .").

As the Court understands it, the state court's conclusion was that there was no evidence to establish a reasonable probability of a different outcome because, even if counsel had attacked the confession as false, it remains that the confession, which was not and has not been repudiated by Nichols, would still have been read to the jury and the victim would still have identified him as the individual who committed the rape and other offenses against her.  *See Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) ("A confession

is like no other evidence. Indeed, "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him....") (citation and internal quotation marks omitted). This rationale for finding no reasonable probability of a different outcome makes perfect sense and is not an unreasonable application of *Strickland*'s prejudice component.

This Court now concludes that, given the very onerous standard Nichols must meet to prevail on his ineffective assistance claim, it was not objectively unreasonable, under the *Strickland* test, for the state court to determine that counsel's alleged failure to investigate the reliability of Nichols's confession to the commission of the offenses against P.G. did not constitute a deficiency of performance and that there was no prejudice. *See Strickland*, 466 U.S. at 690, 694 (prejudice established by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different"); *McAuliffe v. United States*, 2013 WL 452421, *4 (6th Cir. Feb. 7, 2013) ("The likelihood of a different result must be substantial, not just conceivable.") (quoting *Harrington*, 131 S.Ct. at 792; *Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011) (noting that habeas corpus review must utilize both the *Strickland* and § 2254(d) standards, the latter of which "sets forth a heavy burden for a petitioner to overcome").

### b. Other Suspects

The second asserted instance of ineffective assistance is that counsel failed to investigate and inform Nichols that police records implicated other viable suspects. In his reply, Nichols fleshes out his claim by asserting that there were three viable suspects whom counsel failed to investigate—the prime suspect, Fred Coats, along with suspects Phillip Redwine and Jim Snow. According to Nichols, Fred Coats was first identified by two

victims as their attacker; a police dog tracked a scent from one victim's house towards a parking lot where Coats' mother's vehicle was parked; and he was arrested on January 3, 1989, two days before Nichols was arrested.  Phillip Redwine, it is claimed, had shaved off all his body hair when the police attempted to secure hair samples, and Jim Snow had been charged with burglarizing the home of the sister one of the victims, as well as with making obscene telephone calls to her.[6]

Petitioner maintains that counsel minimized the importance of the other suspects and, yielding to a police officer's explanation that there was nothing to the suspicious actions of another suspect (who Nichols suggests was Snow, [Doc. 21, Petr.'s Reply at 12]), did not evaluate themselves the evidence for any potential exculpatory value.  More specifically, Nichols charges that his attorneys performed deficiently by "accepting the view of the investigating police officers as to who is or who is not a suspect in the case, while failing to critically review the evidence," [Doc. 21, Petr.'s Reply at 12].  Likewise, according to petitioner, counsel's "fail[ure] to independently investigate available evidence that would have suggested third-party guilt and established reasonable doubt . . . undermines confidence in the outcome of the trial in the instant case." [Doc. 21, Pet.'s Reply at 17].

This claim was raised in the TCCA and in the state supreme court during the post-conviction appeals.  In the TCAA, Nichols argued that his attorneys "could have established reasonable doubt through some of the other persons investigated for the

_____

[6]    Petitioner does not allege that any of these three individuals was a suspect in the instant case.  Both Coats and Snow were suspects in the rape-murder case, with Coats also being suspected in the rape offenses to which Nichols pled guilty.  (Note that the instant case was tried to a jury.)  The allegations against Redwine are not tied to any specific victim or case, insofar as petitioner's pleadings reveal.

rapes." The state court rejected this claim, finding that the record revealed that the attorneys had "dealt with this issue in their representation of the petitioner." For example, during a hearing in early 1990, lead trial counsel questioned a police officer concerning identifications by two or more victims of a Mr. Coats. Also, at the trial involving another rape victim (P.R.), the victim testified about her misidentification of Coats, explaining that, when she saw Coats's photograph, he shared a lot of features in common with the rapist, but that when she viewed Coats in a line-up several days later, she told the police that he was not the perpetrator.

Further, lead trial counsel testified, during the post conviction hearing, that he was certainly aware of the Coats matter, and co-counsel testified that she had checked the records of some of the persons who had been investigated regarding the rapes, including Mr. Redwine, but had found nothing suggesting he was the offender in the murder case. Co-counsel stated that she had also discussed other suspects with an officer and, when necessary, corroborated information with him. Moreover, counsel stated that there was no evidence which would have shown any "reasonable doubt," and that, if such evidence had existed, it would have been pursued.

Affording defense counsel the strong presumption that their conduct fell within the wide range of reasonable professional assistance, the TCCA found that Nichols had not shown otherwise. As to prejudice, the state court found, in view of the detailed confessions and other proof, that even if counsel had offered the arguments which petitioner alleged would have established reasonable doubt, there was no reasonable probability of a different outcome.

As noted, the claim was also presented to the Tennessee Supreme Court, which iterated that lead counsel had stated that there was nothing to indicate that the confessions were false or coerced and that the investigation of other suspects "did not seem fruitful." *Nichols*, 90 S.W.3d at 592. This state court likewise iterated that co-counsel had testified that Nichols had made vivid and greatly detailed admissions against himself and had described details that only the perpetrator and the victims would have known.

Here, according to the testimony of Nichols's counsel, they investigated other individuals, talked to the police about those individuals, but found no evidence that suggested that the offenses were committed by someone other than Nichols, so as to support a theory of reasonable doubt. Counsel has no duty to continue with an investigation which will be unproductive. *See Wiggins v. Smith*, 539 U.S. 510, 525 (2003) (recognizing that no further investigation need be done where counsel uncovers evidence suggesting that it would be fruitless); *Hamilton v. Ayers*, 583 F.3d 1100, 1129 (9th Cir. 2009) (observing that "the duty to investigate and prepare a defense is not limitless" and "does not necessarily require. . . that counsel must pursue every path until it bears fruit or until all conceivable hope withers") (internal quotation marks omitted); *Mandacina v. United States*, 2001 WL 876924, *2 (W.D. Mo. July 25, 2001) ("Given the demands placed upon trial counsel facing a murder trial, it cannot be expected that counsel will doggedly investigate every conceivable suggestion that maybe someone else was (also?) involved.").

Nor does an attorney's mere reliance on a police detective in assessing whether to proceed with an investigation of another suspect constitute a prejudicial performance. *See Hodge v. Haeberlin* 579 F.3d 627, 650-651 (6th Cir. 2009) (no deficient performance or prejudice where counsel failed to investigate a potential alternative suspect because a

detective had pursued that lead "until it proved to be a dead end"). This is especially true, where the police " received and pursued hundreds of tips, questioned over 100 people, and investigated numerous possible suspects," *Nichols v. Heidle*, ___ F.3d. ___, ___, 2013 WL 3821537 (6th Cir. July 25, 2013), and where duplication of those efforts by defense counsel would have been virtually impossible, given the other demands on counsel's time and resources in preparing petitioner's case for trial. And it must be noted that Nichols has failed to describe any additional evidence which would have supported a reasonable doubt defense and which would have been discovered had counsel conducted a more thorough investigation into the other suspects.

The Supreme Court has observed that "[a]n attorney can avoid activities that appear distractive from more important duties [and is] entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington*, 131 S.Ct. at 789. Given that the AEDPA "demands that state-court decisions be given the benefit of the doubt," *Renico v. Lett*, 599 U.S. 766, ___, 130 S. Ct. 1855, 1862 (2010) (citations omitted), and in view of the onerous standard which must be met to prevail on an ineffective assistance claim under the AEDPA, *see Harrington*, 131 S.Ct. at 788, the Court finds that relief is unwarranted here because the state appellate courts's rejection of petitioner's claim of ineffective assistance was not an unreasonable application of nor contrary to *Strickland* and because the state court did not unreasonably determine the facts placed before it.

c. *Illegal Arrest Claim*

Petitioner argues, in his third claim of ineffective assistance, that counsel did not move to suppress his statements on the ground that they were made after he was illegally

arrested, based solely on an anonymous tip. According to Nichols, the anonymous caller identified Nichols to a police investigator, said he fit the description of the rapist published in the newspaper, and stated that Nichols worked at Godfather's Pizza. Petitioner asserts that since the record shows that no victim identified him before his arrest and since an uncorroborated, unsworn speculation of an anonymous caller does not provide probable cause, counsel gave ineffective assistance by failing to challenge the arrest as illegal.

Respondent maintains that this claim was raised in the state supreme court, quotes extensively from the state court's opinion, and asserts, without any developed argument or analysis, that its subsequent adjudication of the claim is not an unreasonable application of the governing legal standard.

In addressing the issue, the state supreme court first observed that the post-conviction court had determined that trial counsel should have pursued the issue more fully, but that the lower state court had also noted that some of the photo identifications, apparently, had been made after Nichols's arrest, which did not establish that none of the identifications had occurred prior to the arrest. The post-conviction court had also pointed out that the records referred to some pre-arrest identifications, that no victims were called during the post-conviction hearing to ask when they made the identifications of petitioner, and that he had failed to show any prejudice, as he had not established the lack of any pre-arrest identifications.

Citing to proof contained in the record, such as trial testimony and a police report stating that the anonymous tip led to a computer check which, in turn, led to the discovery of Nichols's prior arrest for a sex offense and that a victim identified him from a mug shot, which supported the lower court's factual findings (i.e., that petitioner had been identified

34

before his arrest), the state supreme court concluded that, based on those factual findings, there was no showing of any deficiency on the part of counsel.

Nichols challenges the state courts' factual finding that there is evidence in the record showing that Nichols had been identified before his arrest. Remember that a state court's finding of fact must not be disturbed unless it is an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, § 2254(d)(2), or unless a petitioner provides clear and convincing proof to refute it.

The record contains an offense report, dated January 6, 1989, prepared by the East Ridge Police Department, which states that officers received an anonymous tip on January 5, 1989, which led to a computer check and, thence, to the discovery of Nichols' prior arrest for a sex offense, (Addendum 4, Ex. 49, vol. 1, East Ridge Police Department Offense Report Supplement). The police report indicates that, prior to Nichols's arrest, a victim identified him from a photograph as the perpetrator of the offense against her and that she was the "fourth victim in a row" to make such an identification. The state court's factual finding, thus, is supported by the record and nothing petitioner has offered amounts to clear and convincing contrary evidence. The state court's factual finding will be presumed correct.

A petitioner who charges his attorneys with ineffective assistance of counsel based on their failure to pursue a Fourth Amendment claim must show first that the underlying Fourth Amendment claim had merit. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Here, based on the factual finding that a victim made a pre-arrest identification of Nichols based on a photograph, there was no Fourth Amendment violation since that identification provided probable cause for his arrest. Because Nichols's arrest was supported by

probable cause, counsel did not give ineffective assistance by failing to move to suppress his client's statements based on an arrest lacking probable cause.

Because petitioner did not show that he received ineffective assistance of counsel in this regard, the state court did not unreasonably apply *Strickland* in rebuffing the claim.

d. *Use of Conviction as An Aggravating Circumstance*

In the § 2254 petition, Nichols pleads his last claim of ineffective assistance thusly: "The rape conviction was used to support the aggravating factor in Nichols (sic) death penalty case," [Doc. 1, Pet. at 5]. In the reply, Nichols adds this: "[T]he state court's determination that Nichols was not prejudiced by counsel's failure to investigate circumstances of the arrest and confession and other suspects is unreasonable because Nichols' conviction was used to support the aggravating circumstances in his death penalty case. The state court failed to account for this grave consequence resulting from a conviction in this case," [Doc. 21, Petr.'s Reply at 17]. The Warden did not address this claim in his response.

A challenge involving the use of a prior conviction as an aggravating circumstance should be brought in a habeas corpus petition attacking the state court conviction in which the prior conviction was used to elevate a first-degree murder sentence to death. Such a claim has no home in this case since the state court conviction being challenged in the habeas corpus petition sub judice is a non-capital state court conviction. Therefore, because Nichols's death penalty case is not before the Court, this claim cannot be considered.

But if it could be considered and to the extent that Nichols is asserting that his lawyers were required to exercise extra vigilance in performing their investigations in his

36

non-capital case because of the impact a conviction in the non-capital case would have in subsequent state court capital case proceedings, he has pointed to no Supreme Court case which imposes this additional burden on counsel. While it is true that the Supreme Court's Eighth Amendment jurisprudence instructs that capital sentencing procedures must be especially reliable, it is also true that the "heightened standard 'for reliability [involves] the determination that death is the appropriate punishment . . . '". *Simmons v. South Carolina*, 512 U.S. 154, 172 (1994) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *see Woodson*, 428 U.S. at 305 ("Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two". . .[; thus, t]here is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."). The Court is aware of no Supreme Court case, and Nichols does not cite to one, which extends this Eighth Amendment death penalty jurisprudence to habeas corpus noncapital cases.

Nichols's citation to *Rompilla v. Beard*, 545 U.S. 374 (2005), is not to the contrary, as it is distinguishable on its facts from petitioner's case. *Rompilla* held that attorneys must make reasonable efforts to examine a client's file on a prior rape and assault conviction, where counsel knew that the prior conviction and the victim's trial testimony would be used at sentencing and where the file, located in the same courthouse where the death penalty case was being tried, contained mitigating evidence.

The conviction in the P.G. case did not involve a capital offense or an aggravating factor which would elevate the sentence to death. Moreover, Nichols's attorneys in his death penalty case (which is *not* before the Court) would have no need to obtain the files involving the instant conviction because they represented him in the P.G. case and were

quite familiar with the facts underlying the conviction in the P.G. case. Indeed, counsel "presented time records indicating that they had worked . . . over 650 out-of-court hours and nearly 30 in-court hours on the [non-capital] cases." *Nichols*, 90 S.W.3d at 586.

Accordingly, relief is not warranted with respect to this claim.

3. *Inordinate Delay in Resentencing (Pet., Ground Five)*

In his final claim, Nichols argues that the delay in resentencing him in this non-capital case violated his right to a speedy trial under the Fourth, Sixth, and Fourteenth Amendments and also violated his First Amendment rights under the Petition Clause by denying him federal review.[7] According to the § 2254 petition, Nichols formally asserted his right to a speedy re-sentencing proceeding 3 months after counsel was appointed to represent him in that proceeding. Petitioner asserts that the length of delay was inordinate and was caused by either negligence or bureaucratic indifference on the part of the state. Nichols further argues that he was denied federal review of counsel's performance regarding the aggravating factor in his capital case because the sentence had not been imposed in this case.

The Warden asserts, in his answer, that Nichols cannot be granted relief, as he has failed to show that the state court unreasonably applied the relevant Supreme Court precedent in rejecting this claim or that its decision was based on an unreasonable determination of the facts placed before that state court.

When Nichols presented his claim to the TCCA, the state appellate court, citing to *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), described the

---

[7] Respondent did not address the "Petition Clause" assertion.

factors to be weighed to determine whether a defendant's speedy-trial right has been violated. *Nichols v. State*, 2009 WL 2633099, *5 (Tenn. Crim. App. Aug. 27, 2009). They included: the length of the delay, the reasons for the delay, the assertion of the right, and any prejudice to the defendant in light of the facts and circumstances of the particular case. The TCCA noted that a delay which approaches one year is presumptively prejudicial and triggers an analysis of the remaining factors. The state appellate court identified the delay as being from October 7, 2002, when the state supreme court remanded the non-capital cases for resentencing, to April of 2006, when the State initiated resentencing proceedings (i.e., approximately three years and six months). The TCCA then found the delay, implicitly, to be presumptively prejudicial, and went on to weigh the remaining factors.

The TCCA found that petitioner did not assert his right to a speedy trial in state court until May of 2007, and weighed this factor in favor of the State. The state court also considered Nichols's assertion that the State delayed the resentencing in order to gain a tactical advantage over his ability to collaterally attack his capital and noncapital convictions in federal court. After examining the allegations, the supporting arguments, and the district court's opinion issued in Nichols's capital habeas corpus case, the TCCA found that petitioner might well have shown negligence or bureaucratic indifference, but that he had "failed to establish any tactical advantage gained by the State by delaying the resentencing hearings in the noncapital cases." *Id.*, 2009 WL 2633099, at *8, *10. The state court also recited excerpts from that opinion, in which the district court dismissed claims involving the noncapital cases because the judgment being attacked in the federal habeas proceedings was the capital case and because issues involving the Nichols's noncapital cases were not cognizable claims. Nonetheless, given the "inordinate" length

of the delay, this factor was counted in petitioner's favor, though it was not afforded "the same amount of weight or consideration as an intentional or deliberate delay purposely caused for improper purposes." *Id.*, 2009 WL 2633099, at *10.

Next, the TCCA addressed Nichols's contentions concerning the prejudice factor, which it observed was the most important factor in the *Barker* analysis. The state court began by highlighting petitioner's acknowledgment that he was currently in custody serving an effective sentence of 225 years in unrelated cases and was also awaiting execution of a death sentence. Based on these acknowledgments, the TCCA concluded that Nichols's level of anxiety as to the sentence he would receive in the noncapital cases would have been negligible.

The state court found that petitioner was resentenced to the minimum sentence for each count of the indictment in the noncapital cases, for an effective sentence of twenty-five years, with each sentence to be served concurrently. It then rejected any claim that the delay impeded Nichols's ability to defend himself during the resentencing hearing, as well as any claim that the delay caused him to be unduly imprisoned, given that the sentence he received at the resentencing hearing did not exceed the effective sentence imposed in the other noncapital cases.

The TCCA then turned to Nichols's allegation that he had been prejudiced by an incomplete federal review of the habeas corpus petition in his capital case. The state court again examined the district court's opinion issued in Nichols's capital habeas corpus case and found that the federal court's dismissal of claims involving his noncapital cases was not attributed to any delay in resentencing. This factor weighed against petitioner.

Based on the weighing of the factors, the state appellate court concluded that Nichols's right to a speedy trial had not been violated and that relief was unjustified.

As the TCCA observed, the appropriate analysis for determining whether a defendant's right to a speedy trial has been denied is enunciated in *Barker v. Wingo*, 407 U.S. 514 (1972), which requires the Court to apply a four-factor balancing test, which, in turn, weighs the conduct of both the prosecution and the defendant. *Id*. at 521. Because the state court relied on *Barker* as supplying the governing legal principle to a speedy-trial claim, its decision is not contrary to the well established rule in a Supreme Court case. *Vermont v. Brillon*, 129 S. Ct. 1283 (2009) (applying *Barker* to review of speedy trial claim); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005) (same in § 2254 case); *Davis v. Kelly*, 316 F.3d 125, 127 (2d Cir. 2003) ("The determination of whether pre-trial delay violates the Sixth Amendment is governed by *Barker v. Wingo* . . . .").

Here, the TCCA treated the delay of well over three years as sufficiently prejudicial to invoke a weighing of the remaining *Barker* factors. The factor involving the reason for the delay weighed slightly in petitioner's favor, due to the inordinate length of the delay. Nichols's assertion of the right to a speedy trial occurred in May 2007; the resentencing occurred in December 2007; and the subsequent delay, according to the TCCA, "was the result of [petitioner's] request for continuances." *Nichols*, 2009 WL 2633099, at *7. This factor fell, so the TCCA determined, on the State's side. As discussed, the prejudice factor fell solidly on the State's side.

Under 28 U.S.C. § 2254(d), '[w]hen assessing whether a state court's application of federal law is unreasonable, the range of reasonable judgment can depend in part on the nature of the relevant rule that the state court must apply." *Renico*, 130 S. Ct. at 1864

(citation and internal quotation marks omitted). The speedy-trial right "is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied." *Barker*, 407 U.S. at 521. Also "[a] balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." *Id.* at 530.

In recognition of the "leeway [state] courts have in reaching outcomes in case-by-case determinations," when applying general legal rules, *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), such as *Barker*'s speedy-trial analysis, this Court finds that the TCCA's rejection of Nichols's claim was neither an unreasonable application of *Barker* nor based on an unreasonable determination of the facts presented to the state courts. No writ will issue.

Nichols's second claim in this last ground is that his right to petition the courts under the First Amendment was violated by the inordinate delay in resentencing him. The specific violation alleged is that the delay denied him federal review of counsel's performance regarding the aggravating factor in his capital case. Clearly, petitioner is attempting to bootstrap a claim involving his capital case to a claim in this non-capital case. As the Court has observed earlier in this opinion, claims involving any error of review in Nichols's death penalty case must be raised in the case where the alleged error occurred. Suffice it to say, such a claim is not properly before the Court.

Furthermore, if this Court could entertain the claim, it would be compelled to notice that an examination of Nichols's filings in the TCCA and the Tennessee Supreme Court during his resentencing appeals has not revealed that he offered this particular claim in

those proceedings, [Addendum 8, Docs. 1, 3]. Since Nichols cannot return with this claim

to the state courts, given that the state post-conviction statute of limitations bars any further

review, he likely has committed a procedural default of this particular issue. Petitioner has

offered nothing by way of cause and prejudice and, absent such a showing, federal habeas

review would be barred by his unexcused procedural default. *See, e.g., Friedman v. Smith*,

83 Fed.Appx. 718, 722, 2003 WL 22976586, *4 (6th Cir. Dec. 5, 2003) ("[A] federal habeas

court possesses the authority, in its discretion, to decide a petitioner's claim on the basis

of procedural default despite the failure of the state to properly preserve procedural default

as a defense.") (quoting *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999)).

## IV.  Certificate of Appealability

Finally, the Court must decide whether to issue a certificate of appealability (COA).

A petitioner qualifies for issuance of a COA if he has made a substantial showing of the

denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner, whose claims have

been rejected on the merits, satisfies the requirements of § 2253(c) by showing that jurists

of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*,

529 U.S. 473, 484 (2000). A petitioner, whose claims have been rejected on a procedural

basis, must demonstrate that reasonable jurists would debate the correctness of the

Court's procedural ruling. *Id*.; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards

and finds that those claims do not deserve to proceed further because they have no

viability in light of the governing law. Thus, jurists of reason would not conclude that the

disposition of those claims was debatable or wrong. Because Nichols has failed to make

a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will follow.

**ENTER**:

                         */s/Harry S. Mattice, Jr.*
                         HARRY S. MATTICE, JR.
                         UNITED STATES DISTRICT JUDGE